IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC PAUL CLAYTON, et al.,          :
    Plaintiffs                           :
                            :
v.                                              :        CIVIL NO. AMD 05-3377
                            :
DEERE & COMPANY,                    :
    Defendant                            :
                        ...o0o...

MEMORANDUM OPINION

This is a strict products liability action under Maryland law arising out of an accident in which a parent backed over her child with a lawn tractor. Discovery having concluded, now pending is defendant's motion for summary judgment. For the reasons set forth within, the motion shall be granted.

I.

On April 15, 2003, four-year-old Nathanial "Nate" Clayton's left leg was mangled, which ultimately resulted in an amputation of his foot, by a LX188 John Deere lawn tractor, when his mother, Emily Clayton ("Clayton"), did not see him and backed the tractor over him with the cutting blades engaged.

At approximately 6:00 p.m. Clayton started mowing her lawn; her husband was inside the house with their two children. At some point thereafter, Nate came outside to play. Clayton noticed that Nate was playing in a sandpile on the other side of the house from where she was mowing, and apparently kept her eye on him as best she could. When she began mowing near where he was playing, Nate started to approach the tractor. Thereupon, Clayton disengaged the cutting blades and drove towards him and told him that he had to go

inside. She watched Nate as he went inside the house. Unknown to Clayton, however, Nate came back outside to play in the sandpile.

While mowing the back lawn, Clayton came across a splash block positioned along the wall of the swimming pool. Believing that the splash block was too high to permit the mower blades to clear it, Clayton mowed up to the splash block and then undertook to proceed around it. She affirms that she turned to look over her right shoulder to check behind her, then looked in front of her, then looked over her left shoulder and checked behind her. She saw that the way was clear. Specifically, she testified on deposition that she could see the entire area behind the tractor. She then looked down to the left and began to slowly back up along the pool wall, taking care to not run the tractor into the wall. As she backed up while looking behind her, suddenly the top of Nate's head came into view. She immediately disengaged the cutting blades and moved the tractor forward but it was too late; Nate's left leg had already been injured by the cutting blades.

The user's manual accompanying the tractor and the tractor itself contained numerous warnings specifically highlighting the danger posed to persons (other than the operator), and in particular children, who are present when the tractor is in use. Although Clayton's deposition testimony is at times equivocal, she affirms that she never read the manual (because a salesman had instructed her in the use of the tractor) and she had seen but had not

read the warnings on the tractor itself.* Among other warnings, the tractor bore a graphic image of a child being run over during a backing operation:



The Claytons had purchased the tractor and used it since 1992 (and continued to use it for a time even after the accident.) The tractor complied with all relevant national and industry safety standards at the time it was first marketed and today.

II.

Plaintiffs assert strict liability, breach of warranty, and negligence claims against the defendant, the manufacturer of the tractor. They contend that the tractor contained a design defect because (1) it did not incorporate a "no mow in reverse" ("NMIR") safety feature, which disengages the rotating blades when the mower is placed in reverse; (2) the warnings were inadequate, generally; and (3) more specifically, the warnings in the user's manual and

---

*I agree with defendant that the affidavits submitted by plaintiffs of Clayton and their experts must be heavily discounted as inconsistent with prior deposition testimony. *See Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 806-07 (1999) ("A party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity"); *Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir.1984).

on the tractor did not adequately alert users of the risk that they could back over and severely injure a small child "despite prudently looking behind before backing up." This latter "refinement" of the alleged "risk of harm" is the focus of plaintiffs' opposition to the motion for summary judgment.

I have observed that

> In cases of this sort, Maryland follows the "consumer expectation test," in which a plaintiff alleging strict liability for a product defect in a consumer product must show the following: (1) the product was in a defective condition at the time that it left the possession or control of the seller; (2) it was unreasonably dangerous to the user or consumer; (3) the defect was the cause of the injuries; and (4) the product was expected to and did reach the consumer without a substantial change in its condition. *Phipps v. General Motors Corp.,* 278 Md. 337, 341, 363 A.2d 955 (1976).
>
> A "defective condition" is a "condition not contemplated by the ultimate consumer." *Halliday v. Sturm, Ruger & Company, Inc.,* 368 Md. 186, 193, 792 A.2d 1145 (2002) (quoting Restatement (Second) of Torts § 402A, Comment g). "Unreasonably dangerous" means dangerous "to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* (quoting Restatement (Second) of Torts § 402A, Comment i).
>
> When determining what is "reasonably safe," Maryland courts consider the following factors: (1) the existence of an alternative design that is safer than the design used in the suspect product; (2) the technological feasibility of manufacturing a product with the alternative design at the time the suspect product was manufactured; (3) the availability of the materials required to produce the alternative design; (4) the cost of production of a product that incorporates the alternative design; (5) the price to the consumer of a product incorporating the alternative design; and (6) the chances of consumer acceptance of a model incorporating the plaintiff's suggested alternative design. *Phipps,* 278 Md. at 346 n. 4, 363 A.2d 955; *Nissan Motor Co. Ltd. v. Nave,* 129 Md.App. 90, 120, 740 A.2d 102 (1999).

*Celmer v. Jumpking, Inc.*, 2006 WL 1520689, * 2-*3 (D.Md., May 26, 2006). *See also Hood v. Ryobi North Am., Inc.*, 17 F.Supp.2d 448 (D.Md. 1998)(applying Maryland law and

granting summary judgment), *aff'd sub nom. Hood v. Ryobi America Corp.*, 181 F.3d 608 (4th Cir. 1999); *Tannebaum v. Yale Materials Handling Corp.*, 38 F.supp.2d 425 (D.Md. 1999)(same). "The elements of proof are the same whether the claim [is] characterized as one for strict liability or negligence . . . or breach of warranty." *Watson v. Sunbeam Corp.,* 816 F.Supp. 384, 387 n. 3 (D.Md.1993) (internal citations omitted); *see also Ford Motor Co. v. General Accident Ins. Co.,* 365 Md. 321, 779 A.2d 362, 369-70 (2001).

Thus, to prevail in this case (and to avert summary judgment in favor of defendant), plaintiffs must project evidence which if accepted by a fact finder would prove the above elements, first among them that when the lawn tractor was released for sale it embodied a "defect," i.e., a "condition not contemplated by the ultimate consumer" that rendered the tractor "unreasonably dangerous." If a latent or other non-obvious condition of the tractor posed a danger not perceptible to an ordinary consumer, then a manufacturer's warnings about and on the tractor can "cure" the defect. *Virgil v. "Kash N' Karry" Service Corp.,* 61 Md.App. 23, 484 A.2d 652, 657 (1984) ("Products liability law imposes on a manufacturer a duty to warn if the item produced has an inherent and hidden danger that the producer knows or should know could be a substantial factor in causing an injury.")(citation omitted). Importantly, however, "a general warning of danger suffices, and the manufacturer need not warn of every mishap or source of injury that the mind can imagine flowing from the product." *Hood,* 17 F.Supp.2d at 452-53 (internal quotation marks omitted) (quoting *Liesener v. Weslo, Inc.,* 775 F.Supp. 857, 861 (D.Md.1991)). "[T]here is no need for the warning to specify the nature of the injury to be expected from noncompliance." *Stalnaker v. General*

*Motors Corp.,* 972 F.Supp. 335, 336 (D.Md.1996), *aff'd without op.,* 120 F.3d 262, 1997 WL 408046 (4th Cir.1997).

Plaintiffs posit three discrete "defects" here. First, they contend that the absence of a NWIR feature on the tractor rendered it defective as a matter of law, or, at the least, that a reasonable jury could so find by a preponderance of the evidence. But this very contention has been persuasively rejected by courts applying a "consumer expectation test" not materially unlike that applied by the Court of Appeals of Maryland, *Brown v. Sears, Roebuck and Co.,* 328 F. 3d 1274 (10th Cir. 2003)(applying Utah law); *Britton v, Electrolux*, 2006 WL 2934271 (W.D.Okla., Oct. 13, 2006)(citing *Brown*)(applying Oklahoma law), and I am constrained to reject it here for the reasons explained in those cases.

Plaintiffs also contend that the myriad warnings were inadequate. I disagree, and conclude that no reasonable jury could so find by a preponderance of the evidence. The risk of injury to small children who might be allowed in the area of the tractor's operation was plainly and graphically set out, in full color warnings and safety alerts found in the user's manual and on the tractor itself. (Clayton admits that she did not read any of the warnings; thus, plaintiffs' claims fail on the issue of proximate cause, in any event.)

Finally, cognizant of the persuasive authority of *Brown* and *Britton*, and no doubt aware that the adequacy-of-warnings claim is thin, as mentioned above, plaintiffs have sought to redefine the "risk" and thus the nature of the alleged defect in the tractor at issue here by arguing that the tractor was defective insofar as it permits (and does not specifically warn against the possibility) that the operator could back over a small child "despite

prudently looking behind before backing up." I am not persuaded that this linguistic gloss on the risk that a small child allowed in the area of the tractor's operation would be placed in danger salvages plaintiffs' claims. What is there to be seen will be seen when adequate care in looking is exercised. The strong warnings given by the manufacturer to keep small children out of the area entirely during the tractor's use no doubt contemplates the unfortunate reality that some children are so small, and that some small set of operators will possibly overlook them, that the risk of injury from permitting them to remain near the tractor will be realized. A "prudent operator" warning would add little, if anything, to the store of information provided to the consumer.

III.

For the reasons set forth, the motion for summary judgment shall be granted.


Filed: June 27, 2007                              /s/
                                          Andre M. Davis
                                          United States District Judge